NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHEMETALL US INC.,<br><br>Plaintiff,<br><br>v.<br><br>DONALD LAFLAMME and CORAL<br>CHEMICAL CO.,<br><br>Defendants. | Civil Action No.: 16-780 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to stay or transfer by Defendants. ECF No. 13. Oral argument was heard regarding this motion as well as Chemetall US Inc.'s ("Chemetall") application for a preliminary injunction on February 29, 2016. The Court previously issued an Opinion and Order with respect to the application for an injunction. *See* ECF Nos. 25, 26. This Opinion resolves Defendants' motion to stay or transfer. After considering the parties' submissions and the arguments at the February 29 hearing, Defendants' motion to stay or transfer is denied.

I.      **BACKGROUND**

The Court writes for the parties, and only addresses herein the facts relevant to the present motion. As part of his offer of employment with Chemetall, LaFlamme executed an "Agreement in Consideration of Employment" ("Agreement"). ECF no. 13-2, LaFlamme Decl., Ex. 1 (Agreement). The Agreement contained a forum selection provision in favor of New Jersey courts. *Id.*, Ex. 1 (Agreement), § 13 ("Applicable Law"). Specifically, the Agreement

1

provided that "any and all litigation between him/her and Chemetall relating to this Agreement shall take place in the State of New Jersey." *Id.*

For the reasons discussed in this Court's March 8, 2016 Opinion, LaFlamme resigned from Chemetall and began work at Coral, a Chemetall competitor. Shortly after beginning work at Coral, Chemetall's legal counsel sent letters to LaFlamme and Coral enclosing copies of the Agreement and outlining its position regarding LaFlamme's contractual obligations. *See* ECF No. 1-5, Brunner Decl., Exs. D, E. Chemetall demanded that LaFlamme provide, by February 17, written assurances that LaFlamme would honor his obligations under the Agreement. *Id.*, Ex. D. Chemetall informed LaFlamme that if he failed "to provide the written assurances and representations demanded . . . , [it] intend[ed] to commence an action against [him] . . . ." *Id.* Rather than respond to the letters, on February 11, 2016, Coral and LaFlamme filed an action for declaratory relief against Chemetall in the Southern District of Indiana. *See id.*, Ex. F.

On February 12, 2016, Coral General Counsel, Robert Shupenus, sent a letter to Chemetall's counsel on behalf of Coral and LaFlamme asserting Coral's position that the Chemetall-LaFlamme Agreement was unenforceable, and that LaFlamme was bound by no restrictions. *See* ECF No. 14, Dority Decl., Ex. B. Mr. Shupenus acknowledged in the February 12 letter that the written Agreement contained a choice of law provision, and that New Jersey law allows the narrowing of overly broad non-competition and non-solicitation restrictions in lieu of finding whole provisions unenforceable. *Id.* at 2. Mr. Shupenus nevertheless asserted his position that, under an Indiana court's choice of law analysis, such law would be inapplicable as it was inconsistent with Indiana law. *Id.; see also id.*, Ex. E (Coral's Mem. of Law in Support of Emergency Mot. for Temporary Restraining Order and Prelim. Injunction ("Coral's TRO Mem.")), at 16 ("The Agreement includes a choice of law provision favoring application of New

Jersey law; however, Indiana's choice of law principles render this provision unenforceable, which in turn renders the restrictive covenants unenforceable as well."). On February 15, 2016, Chemetall emailed Mr. Shupenus and Coral's outside counsel a copy of the papers that Chemetall intended to (and did) file with this Court seeking a TRO and preliminary injunction against LaFlamme and Coral. *See* ECF No. 6, Decl. of Robert I. Steiner, dated Feb. 16, 2016 ("Steiner Decl.").

On February 24, 2016, after this Court had issued a TRO and set a hearing date related to Chemetall's application for a preliminary injunction, Coral filed a motion for emergency relief in the Southern District of Indiana seeking to restrain Chemetall from proceeding with the present lawsuit. *See* Dority Decl., Ex. E (Coral's TRO Mem.). On February 25, 2016, the Indiana Court issued an Order denying Coral and LaFlamme's emergency motion. The Indiana court stated that "[a]ll of the plaintiffs' arguments—both on the merits *and on the question of the proper forum*—can be advanced in connection with that hearing [before this Court]." ECF No. 15, Ex. A (emphasis added). The Court's denial of relief to Defendants was without prejudice as "to the merits of the arguments." *Id.*

On March 8, 2016, this Court issued an Opinion finding that LaFlamme had not submitted evidence sufficient to demonstrate that he was not bound by the Agreement, that New Jersey law applied to the matter by operation of the Agreement and New Jersey choice-of-law rules, and that a limited injunction was appropriate. Despite the Agreement and this Court's Opinion, Defendants continue to assert that LaFlamme is not bound by the terms of the Agreement and that the first-filed ruled dictates that the matter should be heard in Indiana and that the Indiana court—not this Court—should be the court to review this issue and make that

decision.  Defendants also argue that, even aside from the first-filed rule, the matter before this Court should be stayed or transferred for adjudication in Indiana.

## II.   LEGAL STANDARD

First-Filed Rule

"[T]he first-filed rule ordinarily counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts."  *Honeywell Int'l Inc. v. Int'l Union*, 502 F. App'x 201, 205 (3d. Cir. 2012) (citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)).  However, "the first-filed rule is not a rigid or inflexible rule to be mechanically applied."  *Univ. of Pa.*, 850 F.2d at 976 (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)).  For example, the rule need not be followed where there are "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping."  *Id.* at 972; *see also Honeywell Int'l*, 502 F. App'x at 205-06 (disagreeing in the circumstances of the case that the "principle of judicial administration should have ensured that [a first-filed] declaratory judgment suit in New Jersey would 'trump' the Union's suit in Michigan").

Transfer

Transfer to another district from a proper venue may be appropriate "[f]or the convenience of the parties and witnesses, [and] in the interest of justice . . . ." 28 U.S.C. § 1404.  However, "[b]efore permitting such a transfer, a district court . . . must consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 269, 297 n.5 (3d Cir. 2001) (internal quotations omitted) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).  Although there is no definitive list of

factors that must be examined, the Third Circuit has identified certain private and public factors for courts to consider. *See Jumara*, 55 F.3d at 879.  The "private interest" factors include: (1) plaintiff s choice of forum; (2) defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *See id.* The "public interest" factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable law. *See id.*   The party moving for transfer bears the burden in demonstrating that a transfer is appropriate. *See id.*

"Within this framework, a forum selection clause generally is treated as a manifestation of the parties' preferences as to a convenient forum." *Id.* at 880.  Thus, the Supreme Court has made clear that "[i]n the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. of W.D. of Tex.*, 134 S. Ct. 568, 581 (2013).  But, "[t]he calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.*  Where there is a forum selection clause, the Court has instructed that the analysis changes in the following three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .
>
> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the

parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .

As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. . . .

Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations. . . .

*Id.* at 581-82 (internal citations omitted).

## III.    DISCUSSION

### First-Filed Rule

As noted above, the Indiana court in the first-filed action has already agreed that the question of the proper forum may appropriately be decided by this Court.  Additionally, this Court has already ruled that LaFlamme is bound by the terms of the Agreement which directs that "any and all litigation" related to the Agreement "shall take place in the State of New Jersey."  Thus, several of Defendants' arguments are now moot.  The Court's decision is therefore limited to determining if there is a basis for disregarding the Agreement's forum selection clause because Defendants rushed to the Indiana courthouse and filed their declaratory relief action first.  The Court finds that the first-filed rule does not require such a result in the circumstances of this case.

First, "the presence of a single forum selection clause will almost always render the first-to-file rule inapplicable. The reason for this exception is, of course, to prevent a plaintiff from taking advantage of the first-to-file rule by first filing a lawsuit in a forum that the forum

selection clause does not permit." *Samuels v. Medytox Solutions, Inc.*, No. 13-7212, 2014 WL 4441943, at *10 (D.N.J. Sept. 8, 2014). Forum selection clauses are presumptively valid. *See Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) Defendants' primary argument against the clause is that the entire Agreement is unenforceable either because it violates Indiana public policy or because of a purported prior breach by Chemetall. The Court has already rejected these arguments based on the evidence presently before the Court.

Second, even without the forum selection clause, transfer would not be required under the first-filed rule as Defendants' rush to file in Indiana was driven by forum shopping. Defendants' correspondence and filings make clear that they understood the requirements of the Agreement, but were counting on maneuvering to have an Indiana court adjudicate the matter and apply Indiana law. *See, e.g.*, Coral's TRO Mem., at 16 ("The Agreement includes a choice of law provision favoring application of New Jersey law; however, Indiana's choice of law principles render this provision unenforceable, which in turn renders the restrictive covenants unenforceable as well."). Defendants made plain at the February 29 hearing that they believed that the application of Indiana law (contrary to the Agreement) would relieve LaFlamme of his obligations under the Agreement.

The facts are also clear that, shortly after LaFlamme started at Coral, Chemetall gave Defendants' written notice that they would take legal action if assurances from Defendants were not received by February 17 that LaFlamme would abide by his obligations to Chemetall. Prior to that date, without notice to Chemetall, Defendants filed a declaratory relief action in Indiana. Chemetall argued at the February 29 hearing:

> You know, your Honor, we sent a letter to LaFlamme. We sent a letter to the general counsel of Coral to avoid litigation. We, the law firm, Kelley Drye, on

7

behalf of Chemetall. We took a pragmatic approach, right, which we think is to be desired. We sent them a letter and we asked them to stop.

They reacted to that letter by rushing to court in Indiana to file first.

So if the motion to transfer is granted, here is what you're saying to potential litigants. Don't try to resolve this with discussion. Rush into a court in a jurisdiction, where they've been open about it, you think the law is much more favorable to you, despite the express forum selection provision, despite an express choice of law, and Chemetall then is punished by trying to play by the rules, right?

Hr'g Tr. at 57:21-58:11. The Court agrees.

Transfer

The Court has previously held (based on the evidence presented to the Court) that the Agreement is enforceable against LaFlamme and that New Jersey law applies to the matter. Because the Agreement contains a plain, mandatory forum selection clause in favor of New Jersey courts, the Court considers only the public interest factors in evaluating whether transfer is appropriate in this case. The Court finds that these factors weigh against transfer as they are either neutral or weigh in favor of New Jersey adjudication. Specifically, the Court has previously addressed public policy considerations and local interest and found that they are at best neutral, and more likely favor New Jersey. March 8 Op. at 12-15. The Court has also found that New Jersey law applies to this matter which favors adjudication by this Court. And, this Court has no congestion of cases.

For the reasons above as well as those provided in the choice-of-law section in this Court's prior Opinion, the Court finds that the forum selection clause in the Agreement directs that litigation shall occur in New Jersey, that the Agreement should not be disregarded because Defendants rushed to file an action in Indiana contrary to the Agreement, and that transfer is not otherwise appropriate in the circumstances of this case.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to stay or transfer is denied. An appropriate Order accompanies this Opinion.


DATED: March 24, 2016

_____
JOSÉ L. LINARES
U.S.D.J.

9